IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GEORGE J. SUSOEFF and
DEBRA F. SUSOEFF,

        Plaintiffs,

v.                                                 Case No. 6:16-cv-01287-JTM

DOUGLAS C. MICHIE,

        Defendant.

**MEMORANDUM AND ORDER**

Plaintiffs initially filed this action in the District Court of Stafford County, Kansas, against their former realtor/attorney Douglas Michie. The complaint sets forth ten claims, including negligence, breach of fiduciary duty, breach of contract, fraud and misrepresentation, and violation of the Kansas Consumer Protection Act (KCPA). Michie removed the action based upon this court's diversity jurisdiction, 28 U.S.C. § 1332, and now moves to dismiss for lack of personal jurisdiction or, alternatively, to transfer the case to the Southern District of California (Dkt. 5). Additionally, Michie moves to dismiss for failure to state a claim upon which relief can be granted (Dkt. 6).

**I. Summary of Complaint.**

The following allegations are taken primarily from plaintiffs' complaint. In 1990, the father of plaintiff George Susoeff gifted him the family ranch located in Placer County, California. George and his wife, Debra F. Susoeff, made the ranch their home

for the next fifteen years. In 2004, plaintiffs decided to sell the ranch and to invest the proceeds. The ranch was their sole asset of any consequence.

Debra was referred to Michie, a resident of California who was licensed as both an attorney and a real estate broker in California. In April 2004, plaintiffs engaged Michie as an attorney and real estate broker to advise them on the sale of the ranch. Michie's legal services included financial planning, advising on the sale, and advising on what to do with the proceeds. He advised them on a tax deferral strategy involving a "like-kind" property exchange under Internal Revenue Code (IRC) Section 1031, including the identification and purchase of appropriate exchange properties.[1]

The ranch was sold for $3 million on September 27, 2005. Michie's listing agreement with plaintiffs provided for a total commission of $174,000, of which $129,000 was paid to Michie's proprietorship (Ventura Realty) and the rest to the buyer's broker. Plaintiffs received a tax allocation for their principal residence of $472,666. The balance of the sale proceeds after expenses was $2,207,783, which was paid over to TimCor Exchange Corp, the IRC Section 1031 accommodator that would be used to buy up-leg investment exchange property.

In October 2005, shortly after the ranch closing, plaintiffs purchased a residence in Macksville, Kansas, and relocated there with the intent of making it their permanent residence. Michie met with plaintiffs in Macksville on October 10, 2005, and advised

---

[1] Under a Section 1031 exchange, a real estate owner who sells investment or business property can defer capital gain taxes on the sale by reinvesting the proceeds in similar ("up-leg") property. A number of requirements must be met to qualify. For example, when the exchange is not simultaneous, the sale proceeds must generally be conveyed to a qualified intermediary, and the up-leg property must be identified and closed upon within a narrow time frame.

2

them that the entire $2.2 million remaining proceeds should be devoted to replacement property to defer substantial capital gains taxes.

At or around the time of the ranch closing, Michie became a registered securities broker-dealer affiliated with Welton Street Investments, LLC. As a licensed broker-dealer, Michie could sell securitized "tenant-in-common" (TIC) fractional property interests, which are regulated investments that can be used to satisfy up-leg property purchase requirements for Section 1031 exchanges.

After Michie's October 2005 visit to Kansas, he continued to advise plaintiffs as their real estate broker. In response to Michie's current motion, George Susoeff alleges in an affidavit that Michie not only assisted them with the purchase of their Kansas residence and another Kansas investment property in October 2005, but he also came to Kansas in November 2005 to advise the plaintiffs. Michie allegedly accompanied George to view several Kansas properties that George was considering as exchange candidates, but Michie examined the properties and told George they were "not right for [him] and not a good investment." Dkt. 8-1 at 5. The affidavit alleges that while Michie was still in Kansas, he recommended TIC investments as a better alternative to the Kansas properties.

In December of 2005, based upon Michie's recommendations, plaintiffs purchased two TIC fractional interests. They invested $1,405,000 as follows: 1) $855,000 for a 3.0% interest in Minnesota real property described as the Shoreview Corporate Center; and 2) $550,000 for a 6.0% interest in California real property described as the

Copley Office Building. Michie was paid a commission of $112,400 for the purchase of these TIC properties.

Michie recommended that the balance of plaintiffs' Section 1031 exchange funds ($802,783) be used to acquire a shopping center in Colorado. Relying on this advice, plaintiffs purchased the Colorado property in February 2006.  Michie assured plaintiffs the foregoing properties were consistent with their investment objectives (both current income and capital appreciation) and their risk tolerance (moderate).

Plaintiffs allege that Michie failed to perform an adequate investigation to determine the value and desirability of the TIC properties. They contend the properties were materially overpriced, that the leases with major tenants were misrepresented, and "the actual total loads associated with the purchase were 25% or more of every dollar invested, more than double the amounts represented to Plaintiffs as loads. As a result[,] the loads were greater than or approximated the capital gains taxes to be deferred[,] resulting in no effective tax deferral benefit…." Dkt. 1 at 15. Plaintiffs allege they would not have purchased the properties had they known these facts. They allege Michie breached a duty as a real estate agent to inform them of these facts, and that they were damaged as a result, with the Shoreview property subsequently being foreclosed upon, resulting in a total loss of their $855,000 investment, and the Copely property being sold at a reduced price, resulting in a loss of approximately $300,000 of their investment. Plaintiffs allege that they incurred an estimated $250,000 in capital gain taxes on these forced sales.

Plaintiffs additionally allege that Michie acted and continued to act towards them in a fiduciary capacity from April 2004 through October 2011; that he breached fiduciary duties by failing to disclose material facts and failing to verify facts concerning the properties; that he breached a contract warranty and the implied duty of good faith and fair dealing by representing that the properties were suitable for plaintiffs; that he intentionally and negligently misrepresented the suitability of the properties; and that he violated the KCPA by recommending unsuitable properties for the plaintiffs.

Plaintiffs allege that on December 1, 2015, their counsel discovered a "no action" letter written to the SEC by counsel for Welton Street Investments on June 26, 2006. The letter sought a determination from the SEC that it would not take enforcement action with respect to real estate brokerage firms not registered with the SEC who contract "dual registered" individuals – that is, individuals who are both licensed real estate agents and SEC licensed broker/dealers with Welton. The focus of the letter was on ensuring that non-registered entities and individuals were not engaging in the sale of regulated securities in violation of federal laws.  Plaintiffs allege that "[a]t no time did [Michie] ever inform Plaintiffs that in the purchase of the TIC Properties … he [was] required to be dual licensed including in the State of Kansas as a real estate broker." Dkt. 1 at 11.

**II. Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. 5).**

Michie contends he had insufficient contacts with Kansas to justify this court's exercise of personal jurisdiction over him. Dkt. 5 at 14. He further argues that exercising jurisdiction would "offend traditional notions of fair play and substantial justice," as

defined by the Supreme Court, because it would be a significant burden on Michie, Kansas has only a remote interest in providing a forum, and plaintiffs can pursue relief in other forums. *Id*. at 15-16.

To obtain personal jurisdiction over a nonresident defendant in a diversity action, the plaintiff must show that the laws of the forum state authorize the exercise of jurisdiction, and that the exercise of jurisdiction does not offend the Due Process Clause of the Fourteenth Amendment. *TH Agric. & Nutrition, LLC v. Ace European Grp., Ltd.*, 488 F.3d 1282, 1286-87 (10th Cir. 2007). Because the Kansas long-arm statute is applied to the full extent allowed by due process, K.S.A. § 60-308(B)(L), the court proceeds directly to the due process analysis, which is a two-step process. First, the defendant must have "minimum contacts" with the forum state such that he should "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287 (1980). Second, the defendant's contacts must be such that the maintenance of the suit "does not offend traditional notions of fair play and substantial justice." *Int'l. Shoe Co. v. State of Washington, Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945).

One way to establish minimum contacts is through specific jurisdiction, which occurs when a defendant "has 'purposefully directed' his activities at residents of the forum, … and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citations omitted). Under this standard, plaintiffs have alleged sufficient facts to show that Michie purposefully directed his activities at residents of Kansas and that the litigation relates to those activities. Plaintiffs allege that after they established residency in

6

Kansas, Michie came to Kansas for the purpose of meeting with them to advise them on structuring their Section 1031 exchange. Subsequent to that meeting, he continued to advise them by contacting and communicating with them at their residence in Kansas. Plaintiffs provide an affidavit alleging that Michie traveled to Kansas a second time, when he recommended against buying Kansas properties and advocated purchasing TIC investments. If these allegations are true, it is fair to say that Michie intentionally acted in a manner expressly aimed at Kansas, and that he acted with knowledge that the brunt of any injury plaintiffs suffered from negligent advice or misrepresented facts would be felt by them in Kansas. *See e.g., Bank of Blue Valley v. Lasker Kim & Co. LLP*, 2016 WL 3881336, *3 (D. Kan. July 18, 2016) ("An injury occurring in Kansas as a result of tortious activity outside the state is considered a tortious act within the state for purposes of personal jurisdiction."). The court thus concludes plaintiffs have shown that Michie had sufficient minimum contacts with Kansas that he could reasonably anticipate being haled into court here on claims relating to faulty advice on the Section 1031 property exchange.

The court also finds that exercising personal jurisdiction over Michie is consistent with traditional notions of fair play and substantial justice. As the Supreme Court noted in *Burger King*, "the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." *Burger King*, 471 U.S. at 474. Michie traveled to Kansas to meet with plaintiffs and to engage in the business of offering his services, and he continued thereafter to contact plaintiffs in Kansas and to advise them. This was not a random or fortuitous contact; it was

7

purposefully availing oneself of the privilege of conducting business within the state. And "because 'modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity,' it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity." *Id.* (citation omitted). In sum, the court finds that the exercise of personal jurisdiction over Michie comports with due process.

Michie next argues that venue is improper in this district. Dkt. 5 at 17. Under 28 U.S.C. § 1391(b)(2), an action may be brought in a judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred." In determining substantiality, the court does not focus solely on matters that give rise to the filing of the action, but to the entire sequence of events underlying the claim. *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1166 (10th Cir. 2010). In this instance, the process of advising plaintiffs about their Section 1031 exchange took place in substantial part in Kansas, as Michie came to Kansas to advise plaintiffs on the process and then continued to direct communications towards them in Kansas. Although Michie is surely correct in asserting that a majority of relevant events took place in other states, the process still included substantial events in Kansas. The court finds venue in this district is proper under § 1391(b)(2).

Finally, Michie argues this court should transfer the action to the Central District of California (Southern Division), because "that is the district convenient to the numerous witnesses and experts, as well as potential cross-defendants, that will be

involved in this litigation." Dkt. 5 at 16. The court concludes that Michie has not made a sufficient showing to support a transfer. Under 28 U.S.C. § 1404(a), the court has broad discretion to adjudicate motions to transfer based on a case-by-case review of convenience and fairness. *See Inspired by Design, LLC v. Sammy's Sew Shop, LLC*, No. 16-CV-2290-DDC-KGG, 2016 WL 4128456, at *11 (D. Kan. Aug. 3, 2016) (citations omitted). But the moving party bears the burden of establishing that the existing forum is inconvenient, and "merely shifting the inconvenience from one side to the other … obviously is not a permissible justification for a change of venue." *Id.* (citing *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010)). Michie states in conclusory terms that California would be a more convenient forum, but fails to back it up with a showing of the availability of compulsory process, accessibility of specific witnesses, the costs involved, relevant advantages and obstacles to a fair trial, and other relevant considerations. *See Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (setting out list of factors). Accordingly, the court will deny the request to transfer under § 1404(a).

### III. Motion to Dismiss for Failure to State a Claim (Dkt. 6).

Pointing out that all of the purchase transactions cited by plaintiffs occurred more than ten years ago, Michie moves to dismiss plaintiffs' claims under Rule 12(b)(6) on the grounds that all of the claims are barred by the applicable statutes of limitation and/or statutes of repose. In response, plaintiffs argue that Michie is equitably estopped from asserting a limitations defense. They contend on December 1, 2015, they first discovered from Welton's June 2006 letter to the SEC that "Michie had concealed

that he was required to be dual-registered, that is to hold a Kansas real estate brokers license and was duty bound to comply with Kansas law…." Dkt. 11 at 23. They contend that "Michie, as Plaintiffs' real estate broker, had a duty to speak and notify the Susoeffs that he was required to hold a Kansas real estate license at the time of his recommendations … given his dual-registration requirement, but knowing he was not so licensed [he] concealed that information." *Id.* Plaintiffs contend the filing of this lawsuit on June 9, 2016, was timely because it was filed less than a year after discovery of the foregoing letter.

The court may grant a Rule 12(b)(6) motion to dismiss based on a statute of limitations defense when the dates given in the complaint make clear that the right sued upon has been extinguished. *Sierra Club v. Okla. Gas and Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016). Based on the allegations and dates in the complaint, it is clear that all of plaintiffs' claims in this case are in fact barred by the statute of limitations or the statute of repose. For reasons further explained below, the motion to dismiss will therefore be granted.

<u>Counts 1, 2, 7, 9, and 10</u>.

Counts 1 and 2 allege, respectively, professional negligence and breach of fiduciary duty by a real estate broker. Count 7 alleges negligence. Plaintiffs contend, and for purposes of the motion the court assumes, that Counts 1, 2, and 7 are all subject to the two-year statute of limitations in K.S.A. § 60-513(a)(4). Those claims are also subject to the statute of repose in § 60-513(b), which provides that "in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the

10

cause of action." Plaintiffs do not dispute that these claims were filed more than ten years beyond the acts giving rise to the causes of action, but contend Michie is equitably estopped from asserting the defense. Dkt. 11 at 23 (*citing Jennings v. Jennings*, 211 Kan. 515, 507 P.2d 241 (1973)). This argument is unavailing for at least three reasons.

First, the *Jennings* case cited by plaintiffs held only that the statute of repose in § 60-513(b) does not apply to actions for fraud. *Jennings*, 211 Kan. at 526-27 ("We must conclude the legislature did not intend that an action based on fraud was subject to the ten-year limitation."). That case says nothing about plaintiffs' claims for negligence and breach of fiduciary duty, which are subject to the ten-year period and are in fact barred by it. *See e.g., Klose v. Wood Valley Racquet Club, Inc.*, 267 Kan. 164, 168, 975 P.2d 1218 (1999) (negligence action must be brought within ten years of the wrongful act).

Second, plaintiffs have not alleged any facts to plausibly support the application of equitable estoppel. To apply the doctrine of estoppel in this context "requires an element of deception upon which the plaintiff acted in good faith in reliance thereon to his prejudice whereby he failed to commence the action within the statutory period." *Klepper v. Stover*, 193 Kan. 219, 222, 392 P.2d 957, 959 (1964). As the court understands it, plaintiffs claim that Welton's June 26, 2006, letter to the SEC -- which is attached to the complaint -- created a legal obligation on Michie's part to obtain a Kansas real estate license, and that Michie covered up that obligation. If that is the claim, it is based on a misrepresentation of the letter, which said nothing of the kind. The letter addressed involvement of non-registered persons in securities sales, which was a concern for real estate firms associating with individuals who were dually-licensed as real estate and

11

securities brokers. (As plaintiffs knew at the time of the transactions, Michie was dually-licensed as a real estate broker in California and as a securities broker through Welton). As the no-action letter pointed out, many states consider sales of TIC securities to be transactions in real estate, but such transactions are also subject to federal securities laws, which may strictly limit participation to those persons who are registered with the SEC. The no-action letter addressed ways to ensure separation of securities and non-securities transactions. It had nothing to do with *which state* a real estate broker had to be licensed by in order to conduct real estate transactions. The suggestion that this letter somehow created an obligation on Michie's part to be licensed in Kansas is simply contrary to the contents of the letter. Moreover, plaintiffs fail to explain what the letter has to do with discovery of the claims in the complaint, such as Michie's alleged failure to conduct due diligence on the TIC properties or his alleged misrepresentation of the character or suitability of the properties. The argument that the SEC letter somehow tolled the statute of repose on these claims is essentially a non-sequitur. On top of all of this, Michie accurately points out that both the 2006 no-action letter and the Kansas laws regulating real estate transactions were publicly available documents, yet plaintiffs offer nothing in the complaint or elsewhere to show they could not have reasonably discovered the basis of their claims until 2015, nearly a decade after the underlying events. *See Wille v. Davis*, 2016 WL 3136911, *3 (10th Cir. May 27, 2016) (Kansas courts charge parties with constructive notice of public records); *Bi-State Develop. Co., Inc. v. Shafer, Kline & Warren, Inc.*, 26 Kan.App.2d 515, 519, 990 P.2d 159 (1999) ("the Kansas Supreme Court [has] held that a party charged with constructive notice cannot claim

12

ignorance of public records in order to toll the statute of limitations") (citing *Travis v. Glick*, 150 Kan. 132, 141, 91 P.2d 41 (1939)).

A third reason why plaintiffs' argument fails as to Counts 1, 2, and 7 is that the doctrine of equitable estoppel does not apply to the statute of repose in § 60-513(b). *See Dixon v. Klenda, Mitchell, Austerman & Zuercher, LLC,* 302 P.2d 1098 (Table), 2013 WL 3331029, *5 (2013) ("Had the legislature wished to allow equitable estoppel to prevent application of the statute of repose, it could have said so in the statute."); *Karlin v. Paul Revere Life Ins. Co.*, 742 F.Supp.2d 1253, 1267 (D. Kan. 2010) (equitable estoppel only bars the statute of repose as to claims for fraud). For all of the foregoing reasons, the ten-year statute of repose applies to Counts 1, 2, and 7, and requires dismissal of those counts.

The basis of Counts 9 and 10 is not completely clear. Count 9 seeks a declaratory judgment and disgorgement of Michie's receipt of a commission on the 2005 sale of plaintiffs' California ranch property. Count 10 alleges unjust enrichment and seeks restitution of all of Michie's commissions. Assuming Count 9 is governed by California law, the court finds it is barred either by the two-year statute of limitations in Cal. Code of Civ. Pro. § 339(a), applicable to verbal agreements, or the four-year limitations period in Ca. Code of Civ. Pro. § 337(1), which applies to written agreements. Count 10 is governed by a three-year statute of limitations, either pursuant to Cal. Code of Civ. Pro. § 338(d) or K.S.A. § 60-512(1). In either event, that claim is time-barred as well, as the claim was filed outside of the limitations period and no valid basis for equitable estoppel or tolling of the statute has been alleged. *See also footnote 2, infra.*

Counts 3 and 4.

Counts 3 and 4 allege a breach of contract and breach of the covenant of good faith and fair dealing. The complaint indicates these claims are based on contracts signed by the parties in 2005 concerning the purchase of TIC properties. Plaintiffs concede these claims are subject to the five-year statute of limitations in K.S.A. § 60-511(a) and that this action was filed more than five years after the alleged breaches. As before, however, they argue that Michie is equitably estopped from asserting a statute of limitations defense. Dkt. 11 at 24. As with their other claims, plaintiffs rely on their asserted 2015 discovery of the 2006 no-action letter to the SEC. For the same reasons indicated previously – including the absence of any coherent explanation why these claims could not reasonably have been discovered until plaintiffs saw the no-action letter - the court finds plaintiffs have not alleged any basis that could support equitable estoppel, and that Counts 3 and 4 are subject to dismissal based on the five year statute of limitations. *Cf. Pizel v. Zuspann*, 247 Kan. 54, 74, 795 P.2d 42 (1990) ("A cause of action for breach of contract accrues when a contract is breached by the failure to do the thing agreed to, irrespective of any knowledge on the part of the plaintiff or any actual injury it causes.").

Counts 5 and 6.

Count 5 alleges that Michie engaged in fraud by recommending TIC investments that he knew were unsuitable for plaintiffs. Dkt. 1 at 23-25. Count 6 alleges that Michie negligently misrepresented the suitability or nature of the TIC properties. *Id*. at 25-26. Both of these claims are subject to a two-year statute of limitations. K.S.A. § 60-513(a)(3).

Under Kansas law, the claim for fraud is not deemed to have accrued "until the fraud is discovered." *Id*.  Once again, plaintiffs rely on their 2015 discovery of the SEC no-action letter to argue that these claims are timely, because at that point they "discovered that Michie had concealed that he was required to be dual-registered with Welton which meant he required a Kansas real estate license and was duty bound to comply with Kansas law…." Dkt. 11 at 22. For reasons discussed previously, such allegations cannot support equitable estoppel or the fraud discovery rule. The 2006 letter did not say that Michie had to have a Kansas real estate license; it has nothing to do with plaintiffs discovering that the suitability of the TIC properties had been misrepresented;[2] and it had been publicly available since 2006. The letter is simply unconnected to plaintiffs' allegations of fraud and misrepresentation. The court finds that Counts 5 and 6 are barred by the two-year statute of limitations in K.S.A. § 60-513(a)(3).

Count 8.

Count 8 alleges that Michie violated the Kansas Consumer Protection Act by committing unconscionable acts because he "knew or should have known that the TIC Properties were unsuitable for Plaintiffs but recommended them anyway to line [his] own pockets with commissions and fees." Dkt. 1 at 28. KCPA claims are subject to the three-year statute of limitations in K.S.A. § 60-512(2), and the time period begins to run

---

[2] As Michie points out, plaintiffs sued him in California state court on October 4, 2012, and in that complaint alleged that Michie fraudulently failed to properly advise them regarding the purchase of the TCI properties. Dkt. 7-2. The court takes judicial notice of that complaint, as well as the other court records cited by Michie, in considering the motion to dismiss. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (on motion to dismiss under Rule 12(b)(6), the court may consider matters of which it may take judicial notice); *United States v. Ahidley*, 486 F.3d 1184, 1192, n.5 (10th Cir. 2007) (court may take judicial notice of publicly-filed court records). Among other things, plaintiffs alleged in that complaint that they first discovered injury due to Michie's conduct in October of 2011. Dkt. 7-2 at 28.

when the alleged violation occurred, not when the violation was discovered. *Campbell v. Hubbard*, 41 Kan.App.2d 1, 7-8, 201 P.3d 702 (2008), *rev. denied*, (Sep. 22, 2008). This claim is accordingly barred by the statute of limitations, as are all of the other claims asserted by plaintiffs in this action.

**IT IS THEREFORE ORDERED** this 19th day of September, 2016, that defendant Michie's Motion to Dismiss for Lack of Personal Jurisdiction or to Change Venue (Dkt. 5) is DENIED; Defendant's Motion to Dismiss (Dkt. 6) is GRANTED. All of plaintiff's claims are barred by the statute of limitations or statue of repose, and the claims are hereby dismissed. Plaintiffs' Motion for Judicial Notice (Dkt. 12) and Objections (Dkt. 13) are DENIED as moot.

       ___s/ J. Thomas Marten_____
       J. THOMAS MARTEN, JUDGE